**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PART-TIME FACULTY ASSOCIATION AT COLUMBIA COLLEGE CHICAGO, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 17 CV 513 |
| v. | ) ) | Judge John J. Tharp, Jr. |
| COLUMBIA COLLEGE CHICAGO, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff union brings this action to confirm an arbitration award resolving a grievance lodged by the union concerning the assignment of teaching duties to part-time faculty of the defendant college. The college seeks to vacate the award on the ground that it contravenes a ruling by the National Labor Relations Board ("NLRB") as to the representation of some part-time faculty members at the school. The court resolves this clash between the authority of the arbitrator and the NLRB in favor of the NLRB, and so denies the motion to confirm the award and grants the motion to vacate it.

## I. BACKGROUND[1]

This case presents another round in a continuing dispute over who represents a group of individuals who are employed by Columbia College Chicago ("CCC") as both full-time staff and as part-time faculty. These individuals are referred to as "Full Time Staff Who Teach," or "FTST" for short. There is no dispute that, with respect to their staff duties, FTST are represented by United Staff of Columbia College ("USCC"). The dispute concerns representation

---

[1] Although the representation issue is disputed, the facts material to resolution of the respective motions to confirm and vacate the arbitration are not.

of the FTST in connection with their work as part-time faculty. CCC maintains that the union that represents all (or virtually all) other part-time faculty ("PFAC") represents FTST in their roles as part-time faculty but PFAC has maintained that FTST are not members of its bargaining unit, or any other.

This dispute over who represents FTST in their role as part-time faculty is playing out in a number of different proceedings. Relevant to this case is an NLRB proceeding filed in February 2015 (Case 13-RC-146452) in which USCC originally sought a self-determination election for FTST. CCC opposed that petition, maintaining that no election was appropriate because PFAC already represented FTST as to their teaching duties. USCC subsequently changed its position to align with that of CCC, arguing that a self-determination election was only needed if the NLRB determined that FTST were not already members of PFAC. For its part, PFAC opposed the self-determination petition as well, but disputed that it represented the FTST. PFAC opposed any outcome resulting in representation for FTST because it would create a minority union to compete with PFAC for the representation of part-time faculty.

In August 2016, after a twelve-day evidentiary hearing, the NLRB's Regional Director issued a "Decision and Order," ruling that the FTST qualify as "dual function" employees and are included in the PFAC bargaining unit in their capacity as part-time faculty. FTST are members of the bargaining unit, the Director concluded, because the PFAC collective bargaining agreement's ("CBA") recognition provision provides that the bargaining unit includes "all part-time faculty members who have completed teaching at least one (1) semester at Columbia College Chicago." Def.'s Cross-Mot. to Vacate Arbitration Award, Ex. 4 at 13, ECF No. 10-4. The Regional Director also concluded that language in the recognition provision that excluded representation of "full-time staff" only prevents PFAC from representing full-time staff

employees in their capacity as staff members. Where such employees also teach part-time, the Director held, they fall within the PFAC bargaining unit description. *Id.* at 14. The Regional Director also concluded, with respect to any evidence of past practice of excluding FTST from PFAC, that "any agreement between the Employer and PFAC to exclude the petitioned-for group of employees [that is, FTST], in their capacity as part-time faculty, would be contrary to Board policy." *Id.*

Because he held that FTST were already represented by PFAC, the Regional Director dismissed the self-determination petition filed by USCC. *Id.* PFAC subsequently sought review of the Director's decision with the NLRB. On February 14, 2017, the NLRB denied PFAC's request for review and affirmed the Regional Director's dismissal of the petition. The NLRB's affirmance did not address the substance of the Regional Director's ruling but was predicated instead on the fact that "no party has argued that the petition should not have been dismissed." Def.'s Resp. in Opp'n to Pl.'s Mot. for Conditional Inj. and Reply in Supp. of Its Mot. to Stay, Ex. A., ECF No. 22-1.[2]

In the meantime, while its petition for Board review of the Regional Director's decision was pending, PFAC also filed a grievance under its CBA with CCC. The grievance alleged that CCC had violated various provisions of the CBA "by unilaterally adjusting and assigning seniority, tiering or credit history of employees including . . . . 'FTST' . . . who teach as part of their full-time staff job description . . ." and because "[n]one of the so-called 'FTST' or other

_____

[2] The NLRB moved for and was granted permission to intervene in this case. *See* ECF Nos. 23 & 28. At a hearing on March 15, 2017, the NLRB represented that its position in this matter is that the motion to confirm the arbitration award should be stayed indefinitely until such time as the Board is squarely presented with a petition that requires adjudication of the dispute concerning representation of FTST (the appeal of the Regional Director's ruling not having done so). After the court denied CCC's motion to stay, however, the Board did not file any brief or motion asserting that position and, accordingly, the court does not address it here. *See also infra* note 10.

persons similarly identified by the College . . . have paid the necessary union dues or agency fees to accrue or maintain seniority in the P-fac unit." Mem. in Supp. of Def.'s Cross-Mot. to Vacate Arbitration Award, Ex. 3 at 1, ECF No. 33-3. CCC, not surprisingly, denied the grievance, and PFAC then sought arbitration of the grievance, as provided for by the CBA procedures. The parties dispute the scope of the issues submitted to the arbitrator, and that debate is addressed in Part II.B, below, but in this background summary, it suffices to note that PFAC expressly disclaimed any intention in seeking arbitration of its grievance in order "to 'bypass' the administrative process regarding representation issues." *Id.*, Ex. 5 at 1.

The arbitrator issued an award on January 11, 2017. Combined Pet. to Confirm Award under FAA and Compl. under LMRA, Exhibit A, ECF No. 1-1. The arbitrator ruled that, "as a matter of contract law," the CBA did not include FTST within the PFAC bargaining unit. *Id.*, Ex. A at 4-5. The arbitrator concluded that this was "the core issue" presented by the grievance because "all of the other alleged contract violations . . . refer to bargaining unit membership." *Id.*, Ex. A at 4. In issuing his award, the arbitrator expressly acknowledged that the Regional Director had ruled that FTST "are already included in the PFAC unit in their capacity as part-time faculty and covered by the PFAC contract." *Id.*, Ex. A at 3. Nevertheless, the arbitrator concluded that the Director's ruling was not determinative of the "core" question of FTST membership in the PFAC bargaining unit because the Director's determination as to representation of FTST "necessarily turns on a benchmark different from the parties' mutual intent when they agreed to the unit description in Article 1 of their agreement." *Id.*, Ex. A at 4. Claiming that benchmark as his north star, the arbitrator concluded that "the parties did not intend to include these employees in the bargaining unit." *Id.*, Ex. A at 5.

After the arbitrator issued his award, PFAC filed this action seeking to confirm the award and to compel CCC to abide by the injunctive terms of the award. CCC responded by filing a cross-motion to vacate the arbitration award. CCC maintains that the arbitration award cannot stand because it directly conflicts with the NLRB ruling that FTST are members of the PFAC bargaining unit. The award must be vacated, it argues, because the arbitrator infringed upon the NLRB's primary jurisdiction over representation issues, including but not limited to the unit placement of disputed employee categories. CCC also maintains that the arbitrator exceeded his authority in reaching the representation issue because that issue was not fairly subsumed within the grievance submitted by PFAC.

Shortly thereafter, on February 2, 2017, CCC moved to stay proceedings in this matter pending the NLRB's review of the Regional Director's ruling (a motion that was mooted by the Board's affirmance of the Director's ruling on February 14, 2017). PFAC responded on February 6, 2017 with a motion seeking a "conditional" preliminary injunction requiring CCC to abide by the arbitrator's award pending resolution of its motion to confirm the award. PFAC's counsel subsequently clarified that this preliminary injunction motion was effectively PFAC's response to CCC's motion to stay and simply reflected that PFAC was seeking an expedited ruling on the merits of its motion to confirm the arbitration award. The parties agreed that the briefs on PFAC's preliminary injunction motion would stand as the briefs on PFAC's motion to confirm the award,[3] and submitted additional briefs on CCC's motion to vacate. The matter has therefore been fully briefed. No party has sought an evidentiary hearing.

---

[3] Since this ruling addresses the merits of the dispute, the court does not address issues relevant only to the granting of a preliminary injunction, such as irreparable harm, which were also addressed in the briefing of this motion.

## II. DISCUSSION

PFAC moves pursuant to § 9 of the Federal Arbitration Act ("FAA") to confirm the arbitration award so that it may be enforced.[4] CCC moves pursuant to § 10(a)(4) of the FAA to vacate the award. The court has jurisdiction over this matter pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and under the federal question jurisdiction provided by 28 U.S.C. § 1331.

To begin, PFAC is unquestionably correct when it observes that judicial review of labor arbitration awards is limited. Section 173(d) of the LMRA provides that "[f]inal adjustment by a method agreed upon by the parties is hereby declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 37 (1987). Accordingly, "[c]ourts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001). As a

---

[4] Labor Management Relations Act ("LMRA") itself provides for arbitration of disputes implicating collective bargaining agreements (*see* 29 U.S.C. § 173) and, as a technical matter, "[i]n seeking to confirm an arbitration award created by virtue of a collective bargaining agreement, recourse is to the LMRA, not the FAA." *Cleveland v. Porca Co.*, 38 F.3d 289, 296 n.5 (7th Cir. 1994). With some exceptions not relevant to this dispute, however (*see Lippert Tile Co., Inc. v. Int'l Union of Bricklayers and Allied Craftsmen*, 724 F.3d 939, 948 (7th Cir. 2013) (noting differences in scope of review of § 301 and FAA awards)), arbitration under the LMRA and the FAA are generally subject to the same governing principles. *See, e.g.*, *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 298 n.6 (2010) (observing that the court of appeals invoked the provisions of the FAA, and precedents applying them "because they employ the same rules of arbitrability that govern labor cases."); *see also, e.g.*, *AT & T Techs., Inc. v. Comm'ns Workers of Am.*, 475 U.S. 643, 650 (1986); *Int'l Union of Operating Eng'rs v. Murphy Co.*, 82 F.3d 185, 188-89 (7th Cir.1996) (observing that the FAA and the LMRA establish the same governing principles and that courts routinely cite decisions under one statute as authority for decisions under the other). Accordingly, the court addresses the arguments in the context of the FAA provisions governing confirmation and vacation of arbitration awards, as have the parties.

general matter, "[t]he refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596 (1960). Because the parties "bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 133 S. Ct. 2064, 2068 (2013) (citing *E. Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 62 (2000)) (internal quotations omitted).

That said, it is also incontrovertible that an arbitration award may be set aside where it conflicts with a decision by the NLRB or the arbitrator has exceeded his authority under a controlling collective bargaining agreement. *See, e.g.*, *Carey v. Westinghouse Elec. Corp.*, 375 US 261, 272 (1964); *Advance Cast Stone Co. v. Bridge, Structural and Reinforcing Iron Workers, Local Union No. 1*, 376 F.3d 734, 743 (7th Cir. 2004); *see also* 9 U.S.C. § 10(a)(4). Nor may a court enforce an arbitration award that is contrary to public policy. *W.R. Grace and Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum and Plastic Workers of Am.*, 461 U.S. 757, 766 (1983). The arbitration award at issue in this case is unenforceable for all of these reasons.

### A. Primary Jurisdiction: The award contravenes the NLRB's ruling that FTST "are represented by . . . PFAC."

CCC contends that, in deciding that FTST are not part of the PFAC bargaining unit, the arbitrator exceeded his legal authority because the award infringes on the NLRB's primary jurisdiction over representation issues involving the interpretation of the NLRA. "Questions of representation under section nine of the National Labor Relations Act, 29 U.S.C. § 159 (1982),

are matters for the National Labor Relations Board."[5] *Int'l Union of Operating Eng'rs, Local Union v. Associated Gen. Contractors of Ill.*, 845 F.2d 704, 709 (7th Cir. 1988). And where the Board decides a representational issue, that decision necessarily takes precedence over an arbitration award on the same issue: "Should the Board disagree with the arbiter, by ruling, for example, that the employees involved in the controversy are members of one bargaining unit or another, the Board's ruling would, of course, take precedence; and if the employer's action had been in accord with that ruling, it would not be liable for damages under § 301." *Carey*, 375 U.S. at 272.

As the Seventh Circuit explained in *Yellow Freight Sys., Inc. v. Auto. Mechanics Local 701 Int'l Ass'n of Machinists, AFL-CIO*, "*Carey* holds that while unit determination may be arbitrable in the first instance, because the decisions of the NLRB take precedence, and therefore should the initial arbitration award conflict with a later NLRB determination on the same question, the NLRB determination prevails and the initial award must fall. This ruling thus reaffirms the ultimate position of control of the NLRB when dealing with decisions construing the National Labor Relations Act." 684 F.2d 526, 529 (7th Cir. 1982). In *Yellow Freight*, the dispute involved which of two unions would represent workers at a new facility. One union filed a representation petition with the NLRB seeking a representation election or, alternatively, an amalgamation of new employees at the facility into its existing bargaining agreement with Yellow Freight. The NLRB rejected amalgamation and ordered an election. The union then filed a grievance premised on Yellow Freight's refusal to apply its CBA to the new workers. Yellow Freight sought an injunction against the grievance arbitration, arguing that any decision by the arbitrator would implicate the subject of representation and would therefore be moot in light of

---

[5] Section 9(b) of the NLRA, 29 U.S.C. § 159(b), governs determinations of "the unit appropriate for the purposes of collective bargaining" on behalf of groups of employees.

the NLRB's rejection of amalgamation and ordering of an election. The Seventh Circuit agreed, holding that any arbitration award would be unenforceable: "since there has been a ruling by the NLRB in this case on the issue of unit clarification, and because we reaffirm that any ruling by the NLRB takes precedence over any potential decision by an arbitrator on the same issue, we decline to compel arbitration of a grievance the substance of which has previously been decided by the NLRB." *Id.* at 530. The primacy of the Board's representation determination dictates the same result in this dispute.

Other circuit decisions confirm the NLRB's primary jurisdiction over issues that implicate representation.[6] In *Smith Steel Workers v. A. O. Smith Corp.*, 420 F.2d 1, 7 (7th Cir. 1969), for example, the Seventh Circuit ruled that the district court was correct in refusing to compel arbitration of a unit representation issue after its determination by the NLRB. Relying on *Carey,* the court of appeals held that "[a]rbitration provides an alternative means of resolving disputes over the appropriate representational unit, but it does not control the Board in subsequent proceedings. . . . The Board's . . . determination of the appropriate units fully disposed of the question." *Id*. Further, the court of appeals noted that the representation determination "***defined the lawful limits of coverage of the contract which the Union sought to***

---

[6] The primacy of Board rulings applies in contexts that do not directly involve representational issues as well. In *Advance Cast Stone*, for example, the Seventh Circuit affirmed the district court's ruling vacating an arbitration award because it was inconsistent with an NLRB ruling as to which of two unions was entitled to perform work on several construction projects, holding that where the NLRB's decision conflicts with an arbitrator's award, "the arbitrator's award may not be enforced by the district court." 376 F.3d at 743. Similarly, in *Local 7-210, Oil, Chemical and Atomic Workers Int'l Union, AFL-CIO v. Union Tank Car Co.*, 475 F.2d 194, 199 (7th Cir. 1973), the Seventh Circuit held that an NLRB ruling that work at a new facility was appropriately assigned to the union representing employees on a plant-wide basis trumped an arbitrator's inconsistent ruling that finishing work at the new plant should have been assigned to the union that represented finishing workers at an older plant that was closing, holding that "once the Board has acted, either before or after the arbitrator's award, the Board's order overrides the arbitrator's decision."

*have enforced under Section 301(a) of the Labor Management Relations Act.*" *Id.* (emphasis

added). That is to say, the Board's representational decision also controlled any argument based

on contract law. Under these circumstances, the court held, the district court "could compel

neither arbitration nor enforce any arbitrator's award in conflict with the Board's order." *Id.*

Cases in other circuits are to the same effect. *See Local Union 204, Int'l Bhd. of Elec. Workers v.

Iowa Elec. Light & Power Co.*, 668 F.2d 413, 419 n.11 (8th Cir. 1982) (courts have consistently

refused to order arbitration where the Board had previously resolved the dispositive

representational issue).

PFAC does not meaningfully contest the proposition that Board rulings trump

inconsistent arbitral awards. Its assertion that "[s]o long as an arbitrator was at least arguably

interpreting the contract, there is no basis for a court to vacate his decision," Pl.'s Brief in Supp.

of its Mot. for a Prelim. Inj. and in Opp'n to Def.'s Mot. to Stay 2, ECF No. 25, is simply wrong;

an arbitration award that is inconsistent with an NLRB ruling as to a matter within its authority

under the NLRA cannot be enforced. PFAC's briefs do not take on *Carey* or *Yellow Freight* or

other precedent invalidating or enjoining arbitration on an issue that has already been addressed

by an NLRB ruling.[7] The only argument PFAC makes on the subject of the Board's primary

jurisdiction is that the Board's jurisdiction to decide representational issues is not exclusive. That

is correct, but irrelevant; both *Carey* and *Yellow Freight* explained that the Board's primary

jurisdiction does not preclude submission of a representation dispute to an arbitrator, but rather

simply assures that, where the Board's resolution of that issue conflicts with that of the

---

[7] PFAC's briefs cite *Carey* for its affirmation that the Board's primary jurisdiction is not
exclusive jurisdiction but ignore its statement that Board rulings "of course" trump inconsistent
arbitral rulings. PFAC's briefs similarly fail to meaningfully address *Yellow Freight* or other
Seventh Circuit cases that apply this aspect of *Carey* to bar or invalidate arbitrations inconsistent
with Board action.

arbitrator, "the Board's ruling would, of course, take precedence." *Carey*, 375 U.S. at 272.

PFAC's reliance on *International Union, United Automobile, Aerospace and Agricultural Implement Workers of America and Its Amalgamated Local Union No. 1369 v. Telex Computer Prods., Inc.*, 816 F.2d 519, 525 (10th Cir. 1987), which holds only that "[m]atters touching on union representation, in the context presented here, are within the concurrent, not exclusive jurisdiction of the NLRB," to rebut CCC's primary jurisdiction argument is misplaced for this reason. CCC does not contend that the Board's primary jurisdiction would bar an arbitrator from ever addressing whether FTST are members of the PFAC bargaining, but only when the Board had already decided that issue. In that case, the primary jurisdiction doctrine requires arbitral deference to the Board's decision.

Here, there is no question that the arbitration award is inconsistent with the NLRB's ruling as to FTST's membership in the PFAC bargaining unit. In denying the representation petition, the NLRB expressly held that FTST are members of the bargaining unit: "In the instant case, employees in the petitioned-for group are already included in the PFAC unit in their capacity as part-time faculty and covered by the PFAC contract." Def.'s Cross-Mot. to Vacate Arbitration Award, Ex. 4 at 13, ECF No. 10-4. The arbitrator concluded that they are not: "FTST employees [are] non-members of the bargaining unit." Combined Pet. to Confirm Award under FAA and Compl. under LMRA, Exhibit A at 5 n.6, ECF No. 1-1. Under the Board's primary jurisdiction, the inconsistent arbitration award cannot stand.

The arbitrator explained his contrary ruling concerning PFAC's representation of FTST as an exercise in contract interpretation. PFAC picks up that mantle by arguing that "[t]he arbitrator took care to limit his ruling to a contract interpretation and to not infringe on the authority of the Labor Board to make findings as to what may be an appropriate bargaining unit."

Pl.'s Mtn. for a Conditional Inj. 7, ECF No. 19. That contention is difficult to credit. While the arbitrator certainly limited the rationale for his ruling to his interpretation of the CBA, in doing so he did not "take care" to avoid infringing the NLRB's authority; he explicitly disregarded that authority by ignoring the NLRB's contrary ruling. Combined Pet. to Confirm Award under FAA and Compl. under LMRA, Exhibit A at 4 n.3, ECF No. 1-1. Understanding that a labor arbitrator's role is limited to interpreting the parties' collective bargaining agreement, and that some elements of the Director's Decision and Order could require interpretation,[8] one would nevertheless expect that, in order to arbitrate a grievance between an employer and a bargaining unit, an arbitrator would have to consider and defer to a clear ruling by the NLRB as to which employees the bargaining unit represents. But here the arbitrator instead substituted his own, contrary, determination of which employees were within the unit because, in his view, the Director's determination turned "on a benchmark different from the parties' mutual intent . . . ." *Id.*, Ex. A at 4. If that passes as respect for the NLRB's authority, what does disrespect entail? In the final analysis, however, whether the arbitrator respected or disrespected the NLRB's authority does not determine whether the arbitration award stands or falls. That question turns on whether the award is inconsistent with the NLRB ruling. Plainly it is, so the award cannot stand even if it was appropriate for the arbitrator to don blinders as to controlling NLRB rulings.

In an effort to reconcile the arbitration award with the NLRB's representational ruling, PFAC characterizes its grievance as a dispute over how work should be assigned, and not over representational issues. Pl.'s Brief in Supp. of its Mot. for a Prelim. Inj. and in Opp'n to Def.'s

---

[8] The parties disagree, for example, about whether the Director's Decision and Order requires treatment of FTST as new additions to the unit or grants them status (and therefore seniority) as members since the date the CBA came into effect. This was a central issue presented by PFAC's grievance; the court takes no position on this or other questions about the issues that were actually presented in the arbitration grievance (as opposed to the representation issue, which was not; *see* Section II.B., *infra*).

Mot. to Stay 5-7, ECF No. 25. According to PFAC, "[t]here has never been . . . a 'jurisdictional' or 'representational' fight in this case." *Id.* at 6. To the extent that PFAC is referring to what it asserted in its grievance, the description is accurate enough.[9] But as a description of what the arbitrator actually decided, PFAC's characterization misses the mark substantially. The arbitrator did not address the manner in which CCC was assigning work to members of the PFAC bargaining unit as that unit had been defined by the NLRB Regional Director, but rather as the arbitrator defined the unit. And that is all the arbitrator did; having defined the unit to exclude FTST, the many issues and complaints PFAC had actually raised in its grievance—representation not among them—were moot. As PFAC acknowledges elsewhere in the same brief, notwithstanding its view that there has never been a representational fight in this case, the issue of "whether certain employees [FTST] are or are not part of the P-fac bargaining unit . . . ***was decided in arbitration***." *Id.* at 7-8 (emphasis added). In other words, even though the grievance comprises only work assignment and seniority issues, the arbitrator addressed representation. That alone means the award cannot stand because it is *ultra vires*. *See* Section II.B., *infra*. And because the arbitrator decided that issue inconsistently with the NLRB's resolution of that question, it cannot stand.

The arbitrator's inconsistent ruling on unit placement, moreover, cannot be justified by a purported distinction between the reasons the arbitrator reached a different conclusion about PFAC's representation of FTST than did the NLRB. The posited distinction is both illusory and

---

[9] The Board's primary jurisdiction does not preclude arbitration of contractual grievances, and it can be assumed for purposes of this discussion that PFAC had every right to file a grievance and pursue arbitration concerning CCC's application of seniority and other work assignment rules to the members of PFAC. PFAC's grievance and arbitration briefs appropriately presented the arbitration as involving work assignment, not representational, issues, but that means that CCC is correct when it argues that the arbitrator exceeded his authority in addressing the representation issue. *See* Section II.B., *infra*.

irrelevant. It is illusory first because the Director, like the arbitrator, concluded that the CBA was ambiguously silent on the subject of FTST representation and therefore relied, as did the arbitrator, on factors such as the parties' past course of dealing. *Compare* Def.'s Cross-Mot. to Vacate Arbitration Award, Ex. 4 at 4, ECF No. 10-4 ("the recognition clause is silent as to whether [FTST] are either included or excluded from the bargaining unit," *with* Combined Pet. to Confirm Award under FAA and Compl. under LMRA at 4-5, Exhibit A, ECF No. 1-1 (concluding that the recognition clause is not clear and unambiguous for the same reason). The Director found, for example, that "record evidence establishes that until recently, there had been no objection to full-time staff who taught apart from their staff duties being included in the PFAC unit." Def.'s Cross-Mot. to Vacate Arbitration Award, Ex. 4 at 4-5, ECF No. 10-4. PFAC's premise that the arbitrator's decision rested on a foundation of contract interpretation while the Director's did not is simply fiction.

So too the claim that the Director's ruling was premised on a "community of interests" analysis and not on consideration of the provisions of the CBA. In point of fact, the Director actually disavowed any need to consider "community of interests," noting that PFAC's arguments that there was not a community of interest between FTST and PFAC members was unsupported by the record but that in any event it was both "unnecessary and inappropriate" to conduct a community of interest analysis where "record evidence clearly established that the employees at issue regularly perform a substantial amount of unit work." *Id.*, Ex. 4 at 13 n.18. Further, the ruling plainly includes ample discussion and consideration of the recognition clause in the CBA. *See, e.g.*, *id.*, Ex. 4 at 4, 13-14.

Apart from its factual flaws, the effort to justify the arbitrator's determination as a ruling premised on unique considerations is also beside the point. Even if PFAC's characterization of

the NLRB's representation ruling was spot on, that would not provide a basis for the arbitrator to disregard the ruling or for a court to confirm an award that is plainly inconsistent with the NLRB ruling. The issue here is not the grounds for, or the merits of, the arbitrator's contract analysis or the Director's resolution of the representation petition; the issue is the primacy of the Board's ruling, even if incorrect or unpersuasive, over the arbitrator's ruling, even if correct or more persuasive.

Other than this unavailing attempt to circumvent the Board's representational ruling by reference to the "contractual" nature of the arbitrator's award, PFAC does not explain how these contrary rulings can be reconciled. PFAC's argument therefore fails the acid test of the Board's primary jurisdiction: it cannot explain how CCC can abide by both the Board's determination that FTST "are members of the PFAC bargaining unit" and an arbitration award that says that they are not.

Instead, PFAC argues that the NLRB ruling does not trump the arbitrator's inconsistent award by asserting that the NLRB did not make a final ruling as to FTST's membership in the PFAC bargaining unit. That argument, premised on equivocal oral statements by a Board attorney at this court's March 15 hearing on the motions to confirm and vacate, fails.[10] The

---

[10] At the March 15, 2017 hearing, the Board's counsel made statements to the effect that the representation issue "has not been fully determined by the Board." Tr. of Proceedings on Mar. 15, 2017 8:2-4, ECF No. 30. The court understands that statement merely to acknowledge the undisputed fact that, in declining review, the Board did not address the merits of the Director's ruling. If the Board intended by that comment to dispute the legal effect of its failure to review the Director's ruling, however, it appears to stand on shaky ground. Certainly it has not offered in this court any basis to treat its denial of review as anything but an affirmance of the Director's ruling and a final action of the Board, consistent with 29 U.S.C. § 102.67(g), and with the Board's recent ruling in *Wolf Creek Nuclear Operating Corp. & Int'l Bhd. of Elec. Workers, Local 225, Petitioner*, 365 NLRB No. 55 (Apr. 7, 2017), where the Board expressly rejected the proposition that "the Board's refusal to grant review is not the same as an official ruling on a subject." That may explain why, though permitted to intervene and to file any brief it wished, the Board did not file anything advancing a position that the Director's Decision and Order does not

representational petition was filed in Region 13 and was adjudicated by the Regional Director by delegation of authority from the Board. Def.'s Cross-Mot. to Vacate Arbitration Award, Ex. 4 at 1, ECF No. 10-4. The Regional Director's decision was appealed to the Board, which declined review because no party was urging that the representation petition should have been granted. The Board's denial of review stands as an affirmance of that decision and constitutes final agency action. *See* 29 C.F.R. § 102.67(g)[11]; *see also Yellow Freight*, 684 F.2d at 529 ("the NLRB declined this request for review, and thus affirmed the regional director's decision"); *Wolf Creek Nuclear Operating Corp. & Int'l Bhd. of Elec. Workers, Local 225, Petitioner*, 365 NLRB No. 55 (Apr. 7, 2017) ("It is also clear as a matter of Board law and procedure that a Regional Director's decision is final—and thus may have preclusive effect—if no request for review is made . . . or if the Board denies a request for review."). It does not matter that Board did not itself address the substance of the representation issue; the dismissal affirmed the Director's ruling. *Id.* In arguing that there is no final NLRB action here, PFAC simply ignores the Board's own regulation regarding the finality of its actions. Under that regulation, the Regional Director's ruling stands as the Board's determination that FTST "are already included in the PFAC unit in their capacity as part-time faculty and covered by the PFAC contract." Def.'s Cross-Mot. to Vacate Arbitration Award, Ex. 4 at 13, ECF No. 10-4.

Finally, PFAC also argues that, because the Board's jurisdiction is primary, but not exclusive, the parties were free to modify the representational terms of their agreement and the

---

constitute a final action by the Board. It has instead filed only a response to supplemental authority submitted by CCC reiterating that it maintains that "its statements to this Court are not inconsistent with the Board's Rules and Regulations." Construing the Board's hearing statements as the limited acknowledgment described above, the court agrees.

[11] 29 C.F.R. § 102.67(g) reads, in pertinent part: "The regional director's actions are final unless a request for review is granted. . . . Denial of a request for review shall constitute an affirmance of the regional director's action which shall also preclude relitigating any such issues in any related subsequent unfair labor practice proceeding."

arbitrator was free to interpret that modified agreement. But there is no such modified agreement. Both the Director and the arbitrator reviewed precisely the same CBA; this is not a case where, after a representational ruling, the parties have reached an agreement to modify the scope of the bargaining unit. Nor is this a case where the parties' past practice constitutes a modification of the CBA terms. Indeed, the Director expressly rejected this argument in his decision, noting that "any ambiguity caused by the Employer and intervenor PFAC's interpretation of the collective-bargaining agreement does not alter the clear fact that as part-time faculty these individuals are appropriately included within the plain language of the PFAC unit description and are members of the PFAC bargaining unit. Moreover, any agreement between the Employer and PFAC to exclude the petitioned-for group of employees, in their capacity as part-time faculty, would be contrary to Board policy." *Id.*, Ex. 4 at 14. PFAC cannot persuasively justify and defend the arbitrator's action by means of an argument that the NLRB has expressly rejected on the grounds of both contract interpretation and public policy.

And as for PFAC's assertion that the arbitration itself represents a "later in time" contractual agreement by the parties to revise the scope of the PFAC bargaining unit by submitting the matter to arbitration, the court notes that the arbitration is not, in fact "later in time" than the NLRB's final ruling. The arbitration award issued before the Board's final action regarding this matter, in which it affirmed the Director's ruling by denying review, and the Board was advised of the arbitrator's ruling before it affirmed the Director's ruling. The Board's action, not the arbitrator's, therefore represents the last determination and the arbitration award cannot be deemed to be a modification of that ruling. The arbitration award recognized as much, noting that the "last chapter" of this dispute would be written by the Board. And so it was. The

Board's ruling was the final word as to representation of FTST by the PFAC bargaining unit and in light of that ruling, the arbitration award cannot stand.

**B.      The Arbitrator Exceeded his Contractual Authority.**

As set forth above, a labor arbitrator has no legal authority to contravene a representation ruling by the Board. It is also true that a labor arbitrator lacks contractual authority to decide an issue that the parties have not agreed to submit to him. If, as PFAC maintains, there has "never been" a representational fight in this case, then the arbitrator had no business deciding a representational issue and it cannot be said that the arbitration award represents a modification of the scope of the bargaining unit to which the parties agreed.

Arbitration is a creature of contract. Thus, "[a] rbitrators have the authority to decide only those issues actually submitted by the parties." *AGCO Corp. v. Anglin*, 216 F.3d 589, 593 (7th Cir. 2000). *See also United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582 (1960) ("arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit").

A second principle, which "follows inexorably from the first, is that the question of arbitrability—whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator. *AT & T Techs., Inc.,* 475 U.S. at 649. Relatedly, questions about whether the parties agreed to arbitrate an issue are presumptively for courts to decide. *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (plurality opinion). "Under that framework, a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock Co. v. Int'l Bhd. of*

*Teamsters*, 561 U.S. 287, 297 (2010) (emphasis in original). And if an arbitrator decides an issue the parties did not agree to submit, that award should be vacated. 9 U.S.C. § 10(a)(4).

The Seventh Circuit has also instructed that "an arbitrator's authority is also limited by the actual issue submitted by the parties. Parties to an arbitration may stipulate the issues they want determined and increase or limit the arbitrator's contractual authority by their express submission. Thus, a reviewing court must also determine whether the arbitrator's decision went beyond the scope of the issue submitted." *Am. Postal Workers Union, AFL-CIO, Milwaukee Local v. Runyon*, 185 F.3d 832, 835 (7th Cir. 1999) (internal citations and quotation marks omitted); *see also Monee Nursery & Landscaping Co. v. Int'l Union of Operating Eng'rs, Local 150, AFL-CIO*, 348 F.3d 671, 677 (7th Cir. 2003) ("Parties to an arbitration may stipulate the issues they want determined and increase or limit the arbitrator's contractual authority by their express submission."); *Int'l Union of Operating Eng'rs, Local No. 841 v. Murphy Co.*, 82 F.3d 185, 187 (7th Cir. 1996) ("Generally, arbitrators should limit their rulings to those issues the parties have actually submitted for arbitration.").

Here, although the parties' agreement to arbitrate is broad, it is narrowed by the requirement of a written grievance that sets forth the particulars of the dispute. Article IX of the CBA sets forth the grievance provisions to which PFAC and CCC agreed. A grievance "is defined as a complaint . . . that there has been a violation, misinterpretation, or misapplication of any provision" of the CBA. Mem. in Supp. of Def.'s Cross-Mot. to Vacate Arbitration Award, Ex. 1 at 17, ECF No. 33-1. Any grievance may be submitted to arbitration if not resolved by other required informal processes set forth in the agreement. Grievances must be in writing, must cite the article(s) of the CBA allegedly violated, specify the dates of the relevant events, identify

the persons involved, allege sufficient facts to support the grievance, and request a remedy. Grievances and arbitration proceedings may be initiated only by PFAC.

The issue here is not whether a grievance involving a representation issue **could have been** submitted to the arbitrator, but whether such a grievance **was** submitted. The CBA requires the submission of a written grievance to arbitrate a dispute, so the scope of that grievance controls the permissible scope of the arbitration. *Runyon*, 185 F.3d at 835 ("The parties may limit the arbitrator's contractual authority to address a dispute through: (1) the contract; and (2) the issue submitted to the arbitrator."). PFAC maintains that the parties did not stipulate to the issues before the arbitrator and so left it to the arbitrator's discretion to decide what the issues were, but that argument (like others PFAC advances) is correct but irrelevant. Here, it is true, the parties did not stipulate to the issues presented for arbitration, but the CBA provides no mechanism for them to do so. To the contrary, the CBA makes the grievance the creation of the union; CCC cannot file a grievance or initiate an arbitration. Thus, it was the grievance—**PFAC's own statement as to the alleged violations of the CBA**—that defined the scope of the arbitration.

And here, it is pellucid that PFAC neither intended nor believed that it was submitting a representation issue to the arbitrator to resolve. Indeed, PFAC expressly disavowed any intention to challenge the NLRB's representation ruling in the arbitration in its arbitration briefing:

> The Union is *not* using this arbitration as a collateral challenge to the Labor Board's ruling. It presented that challenge directly to the Board itself via a Petition for Review and awaits a ruling. So long as the current Decision and Order remains in effect (although not 'final') the Union will comply with it and fairly represent the FTST.

Mem. in Supp. of Def.'s Cross-Mot. to Vacate Arbitration Award, Ex. 5 at 3, ECF No. 33-5. PFAC's argument in its response to the motion to vacate that the parties "put the meaning of" the recognition clause to the arbitrator, or that "the parties left it [the PFAC representation issue] to him to decide," Pl.'s Opp'n to Def.'s Mot. to Vacate Arbitration Award 5, ECF No. 34,, is

simply not a fair characterization of the grievance-arbitration process in this dispute. PFAC's position in this case cannot be squared with the position it took in prosecuting its grievance.

As CCC accurately points out, PFAC's grievance claims are cast in terms focusing on the required method for making seniority determinations, not on determinations about who is eligible for representation by the bargaining unit. This can be seen most clearly in the third paragraph of the grievance, where PFAC refers expressly to the Director's order in noting that the FTST had not paid union dues and so were not entitled to seniority. This paragraph, expressly acknowledging the import of the Director's ruling that FTST are within the bargaining unit, plainly focuses not on any challenge to that ruling but on the concrete issues of how to implement that ruling in making seniority determinations. It reflects that PFAC might well have a legitimate grievance if CCC was assigning work on the basis of its own unilateral determinations about seniority within the bargaining unit; the court takes no position on that question other than to note that is entirely different than a "challenge to the Labor Board's ruling."

PFAC's arbitration briefs take the same approach. Contrary to PFAC's argument that the parties submitted the representation issue to the arbitrator to resolve, its arbitration briefs focus on questions arising from the need to implement the Director's representation ruling. Consider the following statements by PFAC in its opening arbitration brief, with the court's commentary in bracketed italics:[12]

- "Issues Presented: Is the Employer prohibited form unilaterally adjusting or assigning (Unit) Seniority to FTST? If so, what is the remedy?" [*seniority is the only issue identified in PFAC's brief*];

---

[12] The court intends no comment, and takes no position, on the merits of the arguments advanced by the parties in their arbitration briefs. The point here is simply to illustrate that the parties did not "leave it to" the arbitrator to determine whether FTST are members of the PFAC bargaining unit.

- "This dispute arose from the Employer unilaterally granting significant Seniority to a group of employees who had never before been in the Unit or represented by the Union." [*recognizes that FTST now are within the unit*];

- "The Director's decision "did state that FTST are 'already included in the PFAC unit in their capacity as part-time faculty and covered by the PFAC contract,' but was silent as to how to implement that decision." [*acknowledgment of Director's ruling on representation and identifying need for additional guidance as to how to implement the ruling*];

- "Seniority is a matter of contract—not representation—and as such it would be outside the Labor Board's authority to make controlling statements as to what should occur *as a matter of contract* as opposed to *a matter of labor law*." (emphasis in original) [*distinguishing between seniority determinations and representation*];

- "[A] Union has the right to demand that new additions to its unit [*i.e.*, FTST] be end-tailed for seniority purposes when the intent is to protect the integrity of its unit." [*acknowledging that FTST are "new additions" to the unit and therefore members*]; and

- "The Union asks that the arbitrator find that Employer is prohibited from unilaterally adjusting or assigning (Unit) Seniority to FTST . . . ." [*requested relief does not ask arbitrator to address representation*].

Mem. in Supp. of Def.'s Cross-Mot. to Vacate Arbitration Award, Ex. 4, at 1, 4, 5, 6, 15, 17, ECF No. 33-4.

PFAC's arbitration reply brief makes the point that the arbitration was about the implementation of the Director's decision by making seniority determinations, not about the representational question decided by the NLRB:

- "The Labor Board claimed jurisdiction over a representation dispute, *not* a contract dispute over comparative, intra-unit seniority. . . . But the Labor Board was not presented with the issue in this arbitration. It did not decide the issue presented in this arbitration. It did not direct the Employer to take the unilateral actions that caused this grievance." [*this arbitration does not involve representation issue addressed in the NLRB proceeding*];

- "[T]he Union is *not* using this arbitration as a collateral challenge to the Labor Board's ruling. It presented that challenge directly to the Board itself via a Petition for Review and awaits a ruling. So long as the current Decision and Order

remains in effect (although not 'final') the Union will comply with it and fairly represent the FTST." [*quoted above*]; and

- "The Employer insists on conflating an issue of representation that was presented to the Labor Board . . . with an issue of contractual seniority. The two are different issues." [*acknowledging distinction between the issues before the NLRB and those included in the arbitration*].

*Id.*, Ex. 5 at 3, 6.

Now adopting the arbitrator's rationale, PFAC argues that because the grievance referred to Article I (which defines the representation of the bargaining unit) the scope of representation was necessarily in play. Not so. PFAC's arbitration brief makes plain that its reliance on Article I is not to contest the Director's ruling that FTST are not included within the unit, but only to show that up to the point of that ruling FTST were not included in the unit and so could not accrue seniority within the unit. *See id.*, Ex. 4 at 10-11 (Articles I and XI of CBA "make clear that FTST were excluded from the unit by practice and operation of the recognition clause and thus, any 'credits (arguably) accrued' during that period of exclusion 'are not counted in determining bargaining unit membership.'").

Further, PFAC's statement of the grievance does not state that CCC violated any provision by recognizing FTST's membership in the bargaining unit or in any manner other than by "unilaterally adjusting and assigning seniority, tiering or credit history of employees including so-called 'FTST,' and certain others including deans, former deans and persons who teach as part of their full-time staff job description." *Id.*, Ex. 3 at 1. This acknowledges that the alleged violations of the provisions set forth in Article I, II, IV, and VII exclusively concern the manner in which CCC adjusted and assigned seniority among the members of the unit, "***including so-called 'FTST.'***" (emphasis added) Far from alleging that FTST are not members of the unit, the grievance acknowledges that, by virtue of the NLRB's ruling, they are.

Thus, the issue in the arbitration was not whether FTST were within the PFAC unit, but rather whether the manner in which CCC was assigning work by unilaterally determining seniority was consonant with the terms of the CBA. The arbitrator's ruling that the "core issue" in the arbitration was "whether, as a matter of contract law, FTST employees are in the bargaining unit," is inexplicable both in light of the Director's ruling and PFAC's description of the issues in both its grievance and its arbitration briefs. But whatever prompted the arbitrator to reach that conclusion, it was not a submission of the parties and the award therefore exceeds the arbitrator's authority on that basis as well.

### C. Enforcement of the Award Contravenes Public Policy.

For essentially the same reasons that the court has concluded that by issuing a representation ruling inconsistent with that of the NLRB, the arbitrator exceeded his legal and contractual authority, the court also concludes that the arbitration award violates public policy. As the Seventh Circuit explained in *Chrysler Motors*, "[w]hile the merits of a grievance are for an arbitrator, the question of public policy is wholly independent from the collective bargaining agreement and is ultimately one for the courts. . . . The public policy doctrine allows this court to decide de novo whether [the award at issue] violates public policy." *Chrysler Motors Corp. v. Int'l Union, Allied Indus. Workers of Am., AFL-CIO*, 959 F.2d 685, 687 (7th Cir. 1992) (internal citations omitted).

Simply put, enforcement of an arbitration award that purports to resolve a representational issue inconsistently with an NLRB ruling as to that same representational issue violates public policy because it infringes on the primary jurisdiction vested in the NLRB by Section 9 of the NLRA to resolve representation issues. It further violates public policy to force CCC, like Odysseus, between Scylla and Charybdis by requiring it to comply with two

irreconcilable orders, one requiring the college to recognize FTST as members of the PFAC bargaining unit and the other forbidding it from doing so. Neither result is consonant with the overarching national labor policy recognizing the NLRB's primary jurisdiction over representational issues. As set forth in *Carey*, *Yellow Freight*, and the other cases discussed above, that policy trumps even the substantial policy favoring arbitral resolution of collective bargaining disputes where—as here—the results of those arbitrations conflict with matters as to which the Board has exercised its primary jurisdiction.

*       *       *

For the foregoing reasons, the court concludes that the arbitration award, which did not include any alternative ground for the decision, is irreconcilable with the NLRB's Decision and Order recognizing FTST as members of the PFAC bargaining unit, exceeded the arbitrator's legal and contractual authority to issue, and violates public policy. Accordingly, PFAC's motion to confirm the arbitration award is denied and CCC's motion to vacate the award is granted.

Dated: November 9, 2017

John J. Tharp, Jr.
United States District Judge